1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES TYLER ROOTS,                        No.  2:13-cv-01707 KJM AC

12                   Petitioner,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   TIM VIRGA, Warden,

15                   Respondent.

16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed on August

19   13, 2013,[1] ECF No. 1, which challenges petitioner's 2009 conviction for first degree murder and

20   related offenses.  Respondent has answered, ECF No. 14, and petitioner has filed a traverse, ECF

21   No. 20.

22                              BACKGROUND

23   I.     Proceedings In the Trial Court

24          A.  Preliminary Proceedings

25        On March 7, 2008, petitioner was charged by indictment in the San Joaquin County

26   Superior Court with the following seven counts: (1) first-degree murder on October 19, 2007

27   _____

28   [1]  See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is
     deemed filed on the date the prisoner delivered the document to prison officials for mailing).

                                        1

(Cal. Penal Code § 187); (2) being a felon in possession of a firearm on October 19, 2007 (Cal. Penal Code § 12021(a)); (3) attempted robbery on October 23, 2007 (Cal. Penal Code § 211/664); (4) transporting cocaine on October 23, 2007 (Cal. Health & Safety Code § 11379); (5) possession of cocaine with a loaded gun on October 23, 2007 (Cal. Health & Safety Code § 11370.1(a)); (6) being a felon in possession of a firearm on October 23, 2007 (Cal. Penal Code § 12021(a)); and (7) being an active member of a criminal street gang (Cal. Penal Code § 186.22(a)).  Multiple additional enhancements for personally using a gun (Cal. Penal Code § 12022(c)), being released on bail (Cal. Penal Code § 12022.1), and serving a prior prison term (Cal. Penal Code § 667.5) were also alleged.  Finally, the indictment alleged that petitioner had previously been convicted of a serious felony within the meaning of California's Three Strikes Law (Cal. Penal Code §§ 667(d), 1170.12(b)).  1 CT 1-4.[2]  A separate information filed in San Joaquin County Superior Court on July 24, 2008, additionally charged petitioner with attempted escape on May 14, 2008 (Cal. Penal Code § 664/4532(b)(1)), which was subsequently consolidated as count 8 of the pending indictment.  2 CT 541; 3 CT 579.

　　　After count 3 (attempted robbery) was severed, petitioner's jury trial on the remaining seven counts commenced on January 16, 2009.  3 CT 773, 793, 801.

　　　B.  The Evidence Presented At Trial

　　　　1.  Prosecution Case

　　　On October 19, 2007, Obed Pigg was fatally shot in a "smoke shop" in Stockton, California.  Pigg was a friend of the shop's owner and a frequent visitor to the business.  On the day of his death, Pigg drove to the shop in his green Cadillac.  Soon after he entered the shop, someone in a dark, hooded sweatshirt followed him into the store and shot him, firing at least 10 shots.  The assailant fled the store and disappeared into the neighborhood on foot.  The hooded sweatshirt and the gun that fired the fatal shots were later found in a neighboring backyard.

////

////

---

[2]  "CT" refers to the Clerk's Transcript on Appeal, which respondent lodged on December 20, 2013.  See ECF No. 15.

The prosecution presented both motive evidence and eyewitness evidence, as follows, to establish that petitioner was the assailant.[3]

### a. Motive Evidence

Pigg's girlfriend, Tammy Samuels, testified that petitioner had robbed Pigg two weeks before the shooting. On October 5, 2007, Samuels and Pigg had gone to Stribley Park in Pigg's green Cadillac to watch Samuels's son play football. They stopped on the way to get $300 in cash, which Samuels gave to Pigg to pay their share of the rent. At the park, Pigg parked the Cadillac and stayed behind to talk to a friend while Samuels went across the park to the game. When Samuels looked back toward Pigg a few minutes later, she saw a third man join him and his friend. She observed what might have been horseplay or a scuffle, after which Pigg ran to his car, jumped in, and sped off. A few seconds later, Pigg called Samuels' cell phone and began "ranting and raving" so that she could not understand what he was saying. He yelled at her to get out of the park and meet him at the handball court. When he picked her up, he was angry and scared. Pigg exclaimed, "That mother fucker Roots pulled a gun on me and robbed me!" Pigg said that petitioner had taken the rent money that Pigg was carrying. Petitioner had also pulled the trigger on the gun several times, making a clicking sound. Samuels had never before seen Pigg so mad and scared.

Later that night, someone shot at the residence of Pamela Boyce, petitioner's mother, who lived in the same neighborhood as Stribley Park. Petitioner often stayed at the residence. Several shots were fired and caused damage to the house, a vehicle in the driveway, and an adjacent house. Bullets found at the Boyce residence were not a match for Pigg's gun.

The next morning, Pigg took Samuels to Franklin High School for another football game. From a distance, Samuels saw Pigg talking to several men, including petitioner's stepfather, Joe Boyce. The conversation lasted about five minutes, and Pigg left the group of men after giving Boyce a handshake and hug.

After petitioner robbed Pigg and someone shot at the Boyce residence, Pigg and Samuels

---

[3] The defendant could not be ruled out as a source of DNA found on the sweatshirt and gun, but no physical evidence definitively linked him to the shooting.

1   received numerous phone calls.[4]  Pigg became frightened, carrying a gun and saying that he was

2   "not going to fear any man."  One evening about a week after Pigg was robbed, Samuels returned

3   home to find Pigg asleep on the couch.  When she touched him, he startled and jumped up with

4   the gun.

5          Stockton Police Department Detective James Ridenour testified as an expert on Stockton

6   gangs.  Detective Ridenour identified indicia that petitioner was an active participant in the East

7   Coast Crips gang, based in southeast Stockton.  Petitioner had East Coast Crips gang tattoos, had

8   been arrested with another East Coast Crips gang member, and had been identified by other East

9   Coast Crips gang members as a fellow gang member.  He was well-respected in that gang.

10  Petitioner claimed to be an active East Coast Crips gang member when he was booked into jail

11  after being arrested for Pigg's murder.  Detective Ridenour testified that respect is the most

12  important thing to gang members.  They tend to retaliate violently for any perceived lack of

13  respect.

14         Yuronda Breed, the mother of petitioner's child, told an officer one day after Pigg's

15  murder that petitioner had told her several days earlier that he was having "serious problems"

16  with Pigg.  At trial, she testified that she did not remember anything she had said to the officers,

17  due to her drug use at the time of the interview.

18                  b.  Eyewitness Testimony and Statements

19         Daryl Walters was the owner of the smoke shop where Pigg was killed.  He was there on

20  the day of the shooting, and had entered the shop with his young children just ahead of Pigg.  He

21  heard shots and pushed his children to the ground.  He fired his own gun at the assailant after

22  Pigg fell to the floor.[5]  During the subsequent police investigation of the homicide, Walters was

23  shown a photo lineup and identified two photos (number four and number two) as looking

24  familiar.  At trial, Walters testified that he recognized petitioner's photo in the lineup from a

25  newspaper article about the crime.  When asked whether the photo in the newspaper looked like

26  _____

27  [4]  The trial court excluded the contents of the calls, which included third party reports that
petitioner had threatened to harm Pigg.

28  [5]  Walters, who had a previous felony conviction, testified under a grant of immunity for his
possession of the gun.

the assailant who came into his store, Walters responded: "I guess so. Yes. Yes."

Hilda Loza owned a hair salon next door to the smoke shop. She saw a man in a blue, hooded sweatshirt walk past her business. He glanced in toward her and kept walking. She saw the man walk into the smoke shop, and then she heard gunshots. Detective Lopez was present on the day of the shooting when Loza was shown a photographic lineup. Loza looked at it for about 16 seconds before tapping on petitioner's photo (number four in the lineup) and saying: "Oh, my God. Oh, my God.... That's him." Her demeanor then changed as she became nervous and frightened and started backpedaling, saying that it is between photographs four and five. She noted that the eyes and complexion of number four were more like the person she saw, but the facial hair was more like number five's. She did not remember seeing a tattoo on the person's face as depicted in petitioner's photo. At trial, Loza testified that she remembered saying the assailant's eyes were like number four, but did not remember the other statements. Looking at photo number four frightened her.

Daryl Walters's fiancée, Iisha Willis, was in her car behind the smoke shop when she heard the shots fired. As she drove around the corner, she saw the assailant in the blue, hooded sweatshirt. Thinking the man had shot Walters, Willis followed the assailant in her car. The assailant took his hood off and looked at her. He then took off the sweatshirt and continued running away from the smoke shop. Willis followed him for a short distance, yelling at him, before he disappeared over a fence. When she was shown the photo lineup by police, Willis stated that the persons in photos one and two had faces shaped similar to the assailant's face and that number one matched the assailant's complexion. She did not identify petitioner's picture, which was photo number four. At trial, Willis identified petitioner as the man she followed in her car. It was the first time she had seen him in person since the day of the murder.

Officer Raquel Betti testified that she heard a woman screaming and cussing outside while she was conducting an investigation in a nearby bar. Officer Betti went outside and saw Willis in her car following a man in a blue, hooded sweatshirt. Officer Betti had only a side view of the man and could not positively identify the man in the photo lineup. Her report stated that petitioner's photo was "consistent with the subject I had seen running." At trial, she said that the

1   defendant looked "just like" the man she saw.

2       Armando Gutierrez heard the gunshots and saw a man running toward them in a blue,

3   hooded sweatshirt.  Armando identified petitioner when shown the photo lineup later that day.  At

4   trial, however, Armando could not identify the defendant as the man he saw.

5       Armando's mother, Theresa Gutierrez was with Armando when they saw the assailant.

6   She was unable to identify petitioner from the photo lineup.

7       Armando's sister, Elsa Castaneda Gutierrez, was also with Armando and their mother

8   when they heard the gunshots and saw the assailant.  She made eye contact with the man.  Elsa

9   identified petitioner in the photo lineup.  She also identified petitioner at trial.

10      Maxx Chavez heard the gunshots and saw a man in a black, hooded sweatshirt run away

11  from the smoke shop.  When shown the photo lineup, Chavez pointed to a few of the pictures but

12  did not specifically identify petitioner.  About a week after the murder, however, Chavez saw

13  petitioner's picture on the television news and recognized him as the assailant.  At trial, Chavez

14  identified petitioner as the assailant.

15      Patricia Solano saw the assailant walk through her backyard.  She tentatively identified

16  petitioner from the photo lineup, saying petitioner's photo looked like the man she saw.

17              c.   Evidence Regarding Petitioner's Arrest

18      On October 23, 2007, police pulled over a car in which petitioner was a passenger, and

19  arrested him for the Pigg shooting.  Petitioner had a small, loaded revolver in his pocket.  At the

20  police station, a baggie containing cocaine fell out of his pants leg.

21          2.   Defense Case

22      The defense presented evidence that various eyewitnesses had given inconsistent

23  statements or prior descriptions of the assailant that did not match petitioner.  The defense also

24  presented evidence that Daryl Walters expected to receive benefits from the district attorney's

25  office in exchange for his testimony, including assistance relocating his business.

26      C.  Outcome

27      On February 18, 2009, the jury acquitted petitioner on count 8 (attempted escape) but

28  found him guilty of the remaining counts (1, 2, and 4 through 7) and further found the gun-use

1    and bail enhancements to be true.  4 CT 881-895.  In a bifurcated proceeding outside of the jury's

2    presence, petitioner admitted the prior strike and prison term allegations.  10 RT 2704-2709.[6]

3         On April 14, 2009, the trial court dismissed count 3 (attempted robbery) and count 4

4    (transporting cocaine) on the prosecution's motion.  4 CT 1063.  Petitioner was sentenced on the

5    remaining counts and enhancements to an aggregate term of 78 years to life imprisonment.  4 CT

6    1071-1073.

7         II.       Post-Conviction Proceedings

8         Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

9    conviction on October 6, 2011.  Lodged Doc. 4.[7]  The California Supreme Court denied review

10   on January 11, 2012.  Lodged Doc. 8.[8]

11        Petitioner filed a first petition for writ of habeas corpus in the Superior Court of San

12   Joaquin County on July 20, 2012, which was denied without prejudice on the same day.  Lodged

13   Docs. 10, 11.  Petitioner filed another petition in the superior court on November 27, 2012.

14   Lodged Doc. 12.  That petition was denied in a reasoned opinion on January 9, 2013.  Lodged

15   Doc. 13.

16        Petitioner next filed a habeas petition in the California Court of Appeal, which was denied

17   without comment or citation on March 7, 2013.  Lodged Docs. 14, 15.  Petitioner then filed a

18   habeas petition in the California Supreme Court, which was denied on June 12, 2013 with citation

19   to In re Dixon, 41 Cal.2d 756, 759 (1953).  Lodged Docs. 16, 17, 18.

20        By operation of the prison mailbox rule, the instant federal petition was filed August 13,

21   203.[9]  ECF No. 1.  Respondent answered on December 20, 2013.  ECF No. 14.  Petitioner's

---

22   [6]  "RT" refers to the Reporter's Transcript on Appeal, which respondent lodged on December 20,
23   2013.  See ECF No. 15.
     [7]  The Court of Appeal struck the stayed bail enhancements and corrected the days of presentence
24   credit, but affirmed the judgment in all other respects.
     [8]  The petition was denied "without prejudice to any relief to which defendant might be entitled
25   after this court decides People v. Rodriguez, S187680."  Lodged Doc. 8.  On December 27, 2012,
     the California Supreme Court decided Rodriguez, 55 Cal. 4th 1125, 1138-1139 (2012), which
26   held that a defendant is guilty of being an active participant in a criminal street gang within the
     meaning of California Penal Code § 186.22(a) only if he commits the underlying felony with at
27   least one other gang member.
     [9]  See supra n. 1.
28

7

1 | traverse was docketed on March 13, 2014.  ECF No. 20.

2 | STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

3 | 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

4 | 1996 ("AEDPA"), provides in relevant part as follows:

5 | (d) An application for a writ of habeas corpus on behalf of a person
6 | in custody pursuant to the judgment of a state court shall not be
granted with respect to any claim that was adjudicated on the merits
7 | in State court proceedings unless the adjudication of the claim –

8 | (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
9 | determined by the Supreme Court of the United States; or

10 | (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
11 | State court proceeding.

12 | The statute applies whenever the state court has denied a federal claim on its merits,

13 | whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785

14 | (2011).  State court rejection of a federal claim will be presumed to have been on the merits

15 | absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing

16 | Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

17 | unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

18 | "The presumption may be overcome when there is reason to think some other explanation for the

19 | state court's decision is more likely."  Id. at 785.

20 | The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

21 | principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

22 | U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

23 | Federal law," but circuit law has persuasive value regarding what law is "clearly established" and

24 | what constitutes "unreasonable application" of that law.  Duchaime v. Ducharme, 200 F.3d 597,

25 | 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

26 | A state court decision is "contrary to" clearly established federal law if the decision

27 | "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

28 | U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

1    court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

2    the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court

3    was incorrect in the view of the federal habeas court; the state court decision must be objectively

4    unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

5            Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

6    Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

7    reasonably applied clearly established federal law to the facts before it.  Id.  In other words, the

8    focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399.  Where the

9    state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

10   state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th

11   Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily,

12   without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court

13   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

14   determine what arguments or theories may have supported the state court's decision, and subject

15   those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

16                                          DISCUSSION

17   I.      Claim One: Admission of Hearsay Regarding Uncharged Robbery

18          A.  Petitioner's Allegations and Pertinent State Court Record

19           Petitioner contends that his rights to confrontation and to due process ("constitutional

20   right to fair trial") were violated by the admission against him of hearsay evidence regarding a

21   prior robbery.  ECF No. 1 at 5.  Specifically, petitioner alleges as follows:

> The trial court erroneously admitted inadmissible hearsay of an
> uncharged robbery into the trial which resulted in the petitioner's
> unlawful conviction. The admission of the hearsay evidence was
> extremely prejudicial, as concerned "words" from the decedent
> which allegedly accused the petitioner of robbing the decedent.
> This inadmissible hearsay was the heart of the prosecution's case
> even though it wasn't supported by credible evidence.  The
> admittance of overly prejudicial evidence denied the petitioner['s]
> constitutional confrontation rights and a fair trial.

1    Id.[10]

2            The trial court record reveals the following background information.  Tammy Samuels,

3    victim Obed Pigg's girlfriend, testified that Pigg had reported being robbed by petitioner

4    approximately two weeks before his death.  Evidence of the robbery was admitted to establish a

5    motive for the homicide.  The prosecutor's theory of the case was that the homicide culminated a

6    cycle of retaliation: petitioner had first robbed Pigg, then suspected Pigg (rightly or wrongly) of

7    shooting up petitioner's mother's house in retaliation for the robbery, and finally killed Pigg in

8    retaliation for the shooting of the house.

9            The admissibility of motive evidence generally, and the victim's statements to Samuels

10   specifically, was extensively litigated.[11]  The court ruled pretrial that Pigg's October 5, 2007

11   statements that he had just been robbed by petitioner were admissible for their truth, as

12   spontaneous declarations pursuant to Cal. Evid. Code § 1240, and as circumstantial evidence of

13   Pigg's state of mind pursuant to Cal. Evid. Code § 1250.  2 RT 514-516, 3 RT 734-735.

14           Before the jury, Samuels testified that she went to Stribley Park with Pigg and left him by

15   his car when she went to watch the football game.  From a distance she saw Pigg, his friend

16   Robert Ware, and a third man engaged in what she thought was horseplay, slinging each other

17   around.  Next she saw Pigg running, then taking off in his car.  A few seconds later he called her,

18   yelling and screaming for her to get out of the park and meet him at the handball court.  When he

19   _____

20   [10]  In support of his federal habeas petition, petitioner provides the declaration of Robert Ware,
     who states that he was at Stribley Park between 4:00 and 7:00 p.m. on October 5, 2007, and saw
21   no robbery.  ECF No. 22 at 7.  The declaration is dated March 10, 2014.  Id.  Because this
     declaration was obtained after petitioner had exhausted his state remedies, and was not submitted
22   to the California Supreme Court, it cannot be considered here unless petitioner first passes
     through the gateway of § 2254(d) by establishing an objectively unreasonable application of
23   clearly established federal law by the state court.  Pinholster, 131 S. Ct. at 1398 (review under §
     2254(d) limited to state court record), 1401 (new evidence may be considered, subject to
24   limitations of § 2254(e)(2), where § 2254(d) does not bar federal habeas relief).
     [11]  See 3 CT 705-714, 718-719 (in limine motions); 1 RT 53-164, 178-198 (Evid. Code § 402
25   hearing); 1 RT 203-208 (tentative ruling permitting motive theory); 3 CT 756-763 (defense
     motion to exclude evidence); 2 RT 350, 387 (court accepts motive theory); 2 RT 407-419, 445,
26   449, 456-464 (further discussions); 2 RT 505-529, 533-535 (final argument and ruling); 3 RT
     734-735, 752-754 (limiting instructions); 4 RT 902-905 (further argument and ruling); 4 CT
27   1046-1048, 1052-1060 (new trial motion and opposition); 11 RT 2986-2988, 2990, 2992-2994
     (hearing on new trial motion).

28

1    picked her up, he said, "That mother fucker Roots pulled a gun and robbed me." 3 RT 726.

2    Samuels continued, "He just kept saying it and yelling and screaming.  I'd never seen him so mad

3    and so scared on all my life.  In our whole relationship, I've never seen him like that." 3 RT 726.

4    Pigg also told Samuels that "Roots was clocking, clicking the gun, playing with his life." 3 RT

5    727.

6              B.  The Clearly Established Federal Law

7         "As applied to a criminal trial, denial of due process is the failure to observe that

8    fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we

9    must find that the absence of that fairness fatally infected the trial; the acts complained of must be

10   of such quality as necessarily prevents a fair trial." Lisenba v. California, 314 U.S. 219, 236

11   (1991) (holding that admission of coerced confession violates due process).  The United States

12   Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very

13   narrowly."  Dowling v. United States, 493 U.S. 342, 352 (1990).

14        The admission of evidence is generally a matter of state law, and habeas relief does not lie

15   for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The erroneous admission of

16   evidence violates due process, and supports habeas relief, only when it results in the denial of a

17   fundamentally fair trial.  Id. at 72.  The Supreme Court has rejected the argument that due process

18   necessarily requires the exclusion of prejudicial or unreliable evidence.  See Spencer v. Texas,

19   385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 132 S.Ct. 716, 728 (2012).

20        The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

21   enjoy the right to . . . be confronted with the witnesses against him."  The Confrontation Clause

22   prohibits the admission of testimonial out-of-court statements by non-testifying individuals.

23   Crawford v. Washington, 541 U.S. 36 (2004).  Not all hearsay implicates the core concerns of the

24   Confrontation Clause; the dispositive question is whether the statement is "testimonial."

25   Crawford, 541 U.S. at 51.  At the time petitioner's appeal and state habeas petition were decided,

26   the U.S. Supreme Court had not addressed the question whether statements to persons other than

27   ////

28   ////

11

1     law enforcement officials can be "testimonial" for Sixth Amendment purposes.[12]  See Hammon v.

2     Indiana, 547 U.S. 813, 823 n.2 (2006) (reserving the question).  However, it was clearly

3     established that a statement is testimonial only when its primary purpose is the development of

4     evidence to support a prosecution.  Id. at 822 (statements are testimonial when "primary purpose"

5     is "to establish or prove past events potentially relevant to later criminal prosecution.").  The

6     ultimate question is whether, in light of all the circumstances, viewed objectively, the "primary

7     purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony."

8     Michigan v. Bryant, 562 U.S. 344, 358 (2011).

9             C.  The State Court's Ruling

10       Petitioner raised his due process challenge to admission of Samuels' hearsay testimony on

11     direct appeal.  Because the California Supreme Court denied discretionary review, the opinion of

12     the California Court of Appeal constitutes the last reasoned decision on the merits and is the

13     subject of habeas review in this court.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v.

14     Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).  After finding that the evidence was relevant and

15     admissible under the California Evidence Code, the appellate court ruled as follows:  "Since there

16     was no mistake in allowing the prosecutor to pursue the motive theory, the defendant's contention

17     that the trial was unfair and violated his due process rights is without merit."  Lodged Doc. 4 at

18     16-17.

19       Petitioner's Confrontation Clause challenge to Samuels' hearsay testimony was presented

20     to the California Supreme Court in a petition for writ of habeas corpus.  Lodged Doc. 16 at 3

21     (citing Crawford v. Washington, supra), 5 (alleging that admission of Samuels' hearsay testimony

22     violated right to confrontation of witnesses).  That petition was denied with citation to In re

23     Dixon, 41 Cal.2d 756, 759 (1953).  Lodged Doc. 18.

24

---

25    [12]  The Court has recently held that a child's statements to his preschool teachers are not subject
to the Confrontation Clause because they are non-testimonial.  Ohio v. Clark, 2015 U.S. LEXIS

26    4060 (June 18, 2015).  The Court declined to adopt a categorical rule that statements to
individuals other than law enforcement officers can *never* count as testimonial, but stated that

27    "such statements are much less likely to be testimonial than statements to law enforcement
officers."  Id. at *13.  The test is whether the statements were made with the primary purpose of

28    creating evidence for a prosecution.  Id.

12

1    D.  Procedural Default

2          Respondent contends that petitioner's confrontation clause claim is procedurally

3    defaulted, because it was rejected on procedural grounds by the California Supreme Court.  ECF

4    No. 14 at 22-24.  As a general rule, a federal habeas court "will not review a question of federal

5    law decided by a state court if the decision of that court rests on a state law ground that is

6    independent of the federal question and adequate to support the judgment."  Calderon v. United

7    States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir.1996) (citing Coleman v. Thompson,

8    501 U.S. 722, 729 (1991)); cert. denied, 520 U.S. 1204 (1997).  The fact that the state court

9    alternatively ruled on the merits does not erase the effect of a procedural bar.  Harris v. Reed, 489

10   U.S. 255, 264 n. 10 (1989).

11         Here the state court rejected petitioner's habeas petition with citation to Dixon, 41 Cal. 2d

12   756, which generally bars consideration in habeas of matters that could have been raised on direct

13   appeal.  Respondent contends the Dixon bar applied to petitioner's confrontation claim, which

14   was raised for the first time in state habeas, and that the claim is therefore defaulted.  Petitioner

15   insists that he did present his confrontation claim on direct appeal, and contends that the Dixon

16   bar therefore does not apply to this claim.  ECF No. 20 at 19-20 (". . . the confrontation issue was

17   fairly tendered to both the California Appellate Court (on direct appeal) and Supreme (in Petition

18   for Review).").  Petitioner does not identify where in his petition for review the confrontation

19   claim was raised, however.  The undersigned has reviewed the petition, and finds that its

20   discussion of the robbery evidence did not include an assertion of petitioner's rights under the

21   Confrontation Clause.  The direct appeal process exhausted petitioner's due process claim(s)

22   regarding the motive evidence at issue in Claims One and Four of the federal petition, but did not

23   present any Confrontation Clause claim.  Accordingly, respondent is correct that the state habeas

24   court's citation to Dixon represents a rejection of the claim on procedural grounds.

25         A petitioner can overcome a procedural default by demonstrating cause and prejudice.

26   Coleman v. Thompson, 501 U.S. 722, 753 (1991).  Ineffective assistance of counsel can, if

27   pleaded and proved, establish cause for a default.  Murray v. Carrier, 477 U.S. 478, 488 (1986);

28   Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  Here, petitioner's Claim Two, liberally

13

1   construed, alleges that trial counsel was ineffective in failing to make objections that would have

2   excluded the hearsay evidence of the robbery.  Although petitioner has not stated a free-standing

3   claim for ineffective assistance of appellate counsel,[13] trial counsel's failure to preserve the

4   confrontation issue may have prevented such presentation and thus constituted the underlying

5   cause for the default.  Accordingly, the cause and prejudice inquiry applicable to Claim One

6   could arguably overlap with the merits of Claim Two.  This is so because in both the default and

7   merits contexts, petitioner must establish prejudice from counsel's performance, which in turn

8   requires analysis of the strength of the claims that counsel failed to present.  See Moorman v.

9   Ryan, 628 F.3d 1102, 1106-07 (9th Cir. 2010), cert. denied, 132 S.Ct. 346 (2011).

10          Apart from the cause and prejudice inquiry, application of the default doctrine requires

11   evaluation of the "adequacy" of the state rule invoked to bar relief in state court.  To be deemed

12   adequate, the rule must be well established and consistently applied at the time of the purported

13   default.  Walker v. Martin, 131 S.Ct. 1120, 1128 (2011).  Adequacy is analyzed pursuant to the

14   burden-shifting framework established by Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003),

15   which requires consideration of empirical data regarding the state courts' history of application of

16   the rule at issue.  The adequacy inquiry regarding Dixon can be particularly complicated.  See

17   Lee v. Jacquez, __ F.3d __, 2015 U.S. App. LEXIS 9586 (June 9, 2015) (reversing and

18   remanding for further proceedings regarding regularity and consistency of Dixon bar's

19   application at time of petitioner's default).  This court need not delay disposition of petitioner's

20   claims in order to enter that fray.

21          A federal court may bypass consideration of a procedural bar issue in the interests of

22   judicial economy, where the asserted default presents complicated questions and the other issues

23   are resolvable against the petitioner.  Lambrix v. Singletary, 520 U.S. 518, 522−25 (1997);

24   Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).  The court finds that the circumstances

25   here, as summarized above, support bypass of the procedural default issue.

26   _____

27   [13]  Petitioner does argue in the traverse that ineffective assistance of appellate counsel caused any
     default.  ECF No. 20 at 29.  In order to support cause and prejudice, however, ineffective
     assistance of appellate counsel must be independently pleaded and exhausted.  See Carrier, 477

28   U.S. at 489.

1        E.   Objective Reasonableness Under § 2254(d)

2              The state court's rejection of this claim did not involve an objectively unreasonable

3      application of clearly established federal law.  The confrontation claim fails because Pigg's

4      statements to his girlfriend were not "testimonial statements" which implicate the core of the

5      Confrontation Clause.  See Crawford, 541 U.S. at 51.  Pigg's exclamations to Samuels cannot

6      even arguably have had the primary purpose of creating an out-of-court substitute for trial

7      testimony.  See Michigan v. Bryant, 562 U.S. at 358.  Because the statements about which

8      Samuels testified were not testimonial, and therefore fall outside the scope of "clearly

9      established" confrontation law, § 2254(d) bars relief.  See Delgadillo v. Woodford, 527 F.3d 919,

10     927 (9th Cir. 2008) (AEDPA bars relief on confrontation claim involving hearsay statement by

11     non-testifying victim to co-workers, because statement not testimonial under clearly established

12     federal law).

13             No matter how meritorious petitioner's hearsay argument, the admissibility of non-

14     testimonial hearsay is a question of state law that this court may not revisit.  See Lewis v. Jeffers,

15     497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law).  This

16     court is bound by the California Court of Appeal's ruling that the motive evidence generally, and

17     Pigg's statements to Samuels specifically, were admissible.  See Bradshaw v. Richey, 546 U.S. at

18     76 (federal habeas court bound by state court's interpretation of state law).  Because U.S.

19     Supreme Court precedent does not clearly bar consideration of non-testimonial hearsay, federal

20     habeas relief is unavailable.  See Delgadillo, 527 F.3d at 927.

21             Petitioner's alternative due process theory does not support relief, because the trial was

22     not rendered fundamentally unfair by the disputed hearsay.  The U.S. Supreme Court has

23     explained that the improper admission of evidence does not render a trial fundamentally unfair

24     where the evidence is subject to adversarial testing, and the jury is properly instructed.  Dowling,

25     493 U.S. at 353 (rejecting argument that admission of acquitted conduct rendered trial

26     fundamentally unfair).  Here, Samuels was cross-examined about what Pigg told her, defense

27     counsel argued strenuously that the robbery had not been proven, the motive theory as a whole

28     was attacked by the defense and debated in closing arguments, and the jury was given appropriate

15

1   limiting instructions.  Eyewitness testimony, completely independent of the motive evidence,

2   supported the jury's finding that petitioner was the assailant.

3          In light of the record as a whole, there is no likelihood that the prosecution's burden of

4   proof was undermined by the jury's consideration of the robbery evidence, or that the trial was

5   otherwise rendered fundamentally unfair.  Certainly there was nothing objectively unreasonable

6   about the state court so concluding.  And because no Supreme Court precedent holds that due

7   process is violated by the admission of non-testimonial hearsay, or motive evidence in general,

8   relief is not available here.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)

9   (where no Supreme Court precedent controls the issue raised by a habeas petitioner in state court,

10  the state court's decision cannot be contrary to, or an unreasonable application of, clearly

11  established federal law).

12  II.     Claim Two: Ineffective Assistance Of Counsel

13         A.     Petitioner's Allegations and Pertinent State Court Record

14         Petitioner alleges as follows:

15              Petitioner's trial counsel, Lance Jacot, did not do any pre-trial
                investigation which left him unprepared and incompetent in
16              defending petitioner at trial.  Trial counsel failed to make the proper
                E.C. 702 (personal knowledge) objection at a 402 hearing,
17              concerning the inadmissible hearsay that was ultimately allowed to
                taint the petitioner's chance at a fair trial.  Had trial counsel
18              properly objected as competent counsel should have, the
                prosecution would have been compelled to prove that the witness
19              had personal knowledge of the uncharged robbery which ultimately
                was used as motive evidence against petitioner and resulted in the
20              illegal conviction that petitioner got.

21  ECF No. 1 at 7.

22         The trial court record reflects that defense counsel moved in limine to exclude motive

23  evidence generally and Tammy Samuels' hearsay testimony about the robbery in particular.  3 CT

24  714-720.  Defense counsel cross-examined Samuels at an in limine hearing pursuant to Cal. Evid.

25  Code § 402, 1 RT 53-135, and subsequently filed a brief arguing that her hearsay testimony was

26  inadmissible, 3 CT 756-763.  Counsel argued that there was no credible evidence to establish that

27  petitioner had robbed Pigg.  2 RT 371.  Counsel renewed the hearsay objection when Samuels

28  testified.  3 RT 725.

1          B.  The Clearly Established Federal Law

2          To establish a constitutional violation based on ineffective assistance of counsel, a

3  petitioner must show (1) that counsel's representation fell below an objective standard of

4  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

5  Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

6  adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

7  errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

8  address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

9  prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

10  sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

11          C.  The State Court's Ruling

12          Respondent represents that this claim was submitted to the California Supreme Court in

13  petitioner's state habeas petition.  ECF No. 14 at 24.  Although that petition as a whole was

14  rejected with citation to Dixon, 41 Cal. 2d 756, respondent does not assert any procedural bar in

15  this context because he acknowledges that Dixon does not apply to ineffective assistance claims.

16  Id. at 24-25.

17          If this claim was indeed presented to the California Supreme Court in habeas, then its

18  denial would be unexplained and this court's review would be guided by Richter, 131 S.Ct. 784-

19  85.  However, it does not appear to the undersigned that the claim was in fact presented to the

20  California Supreme Court.  The petition filed in that court attacks the admission of hearsay and

21  motive evidence in a single omnibus claim; it does not assert ineffective assistance of counsel.

22  Lodged Doc. 18.  The exhibits submitted in support of the California Supreme Court petition

23  included a statement of the IAC claim that appears to be excerpted from a petition filed in a lower

24  state court.  Lodged Doc. 17.[14]  It is doubtful that inclusion of the claim in exhibits to a different

25  claim constitutes the "fair presentation" necessary to exhaust state remedies.  See Baldwin v.

26  Reese, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a

27

28  [14]  Lodged Doc. 17 is not internally paginated.  The IAC claim, identified as Ground 4, is
included at the end of Exhibit F (Yuronda Breed's testimony).

1   claim to a state court if that court must read beyond a petition . . . that does not alert it to the

2   presence of a federal claim in order to find material. . . that does so.").

3        This exhaustion problem is another procedural rabbit-hole the court chooses to avoid.

4   Relief may not be granted on an unexhausted claim, but it may be denied.  § 2254(b)(1)(A),

5   (b)(2).  For the reasons that follow, the claim fails whether it is reviewed deferentially, as a silent

6   denial, or under the de novo standard.

7        D.  Objective Reasonableness Under § 2254(d)

8        If petitioner's ineffective assistance of counsel claim was considered by the California

9   Supreme Court, it was not unreasonably denied.  Conclusory allegations are insufficient to

10  support a collateral attack on a conviction.  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)

11  ("[c]onclusory allegations which are not supported by a statement of specific facts do not warrant

12  habeas relief.").  Petitioner alleged no facts to support the prejudice prong of Strickland.  He did

13  not specify what evidence would have been discovered by additional defense investigation, or

14  how further preparation would have led to a different outcome.  See Grisby v. Blodgett, 130 F.3d

15  365, 373 (9th Cir. 1997) ("Speculation about what [a witness] could have said is not enough to

16  establish prejudice."); Hendricks v. Calderon, 70 F.3d 1032, 1042 (1995) ("Absent an account of

17  what beneficial evidence investigation into any of these issues would have turned up, [petitioner]

18  cannot meet the prejudice prong of the Strickland test.").[15]  Because petitioner's allegations of

19  failure to investigate do not establish a prima facie claim under Strickland, the state court's denial

20  of relief was both reasonable and correct.  See Strickland, 466 U.S. at 697 (if it is easiest to

21  dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be

22  followed).

23        The section 402 hearing was vigorously litigated.  Petitioner contends that an objection on

24  personal knowledge grounds pursuant to Cal. Evid. Code § 702 would have kept out the evidence

25  of the robbery, but the objection is unlikely to have succeeded.  The hearsay objections counsel

26

27  [15]  To the extent that the declarations of Robert Ware and Yuranda Breed, ECF No. 22, can be
     construed as evidence that diligent trial counsel might have developed for trial, they cannot be
28  considered here because they were not before the California Supreme Court.  See Pinholster, 131
     S. Ct. at 1398.

1    did make, which fully addressed the fact that Samuels was testifying to something she had heard

2    from Pigg and not something she had personally observed, were overruled and that decision was

3    upheld on appeal.  There is no reason to think that the result would have been different had the

4    objection been couched in personal knowledge terms.  Accordingly, the claim fails insofar as it is

5    predicated on failure to make an objection under Cal. Evid. Code § 702.  See Lowry v. Lewis, 21

6    F.3d 344, 346-47 (9th Cir. 1994) (to prevail on ineffective assistance of counsel claim, petitioner

7    must demonstrate that motion would have succeeded and that outcome of trial would have been

8    different as a result).

9           For all these reasons, relief is not available on Claim Two under any standard of review.

10   III.    Claim Three: Admission Of Detective Hutto's Testimony Regarding Yuronda Breed's

11           Statement

12           A.  Petitioner's Allegations and Pertinent State Court Record

13   Petitioner alleges as follows:

14           The trial court allowed the prosecution to illegally impeach one of
             its own witness[es] and circumvent CA evidence codes by allowing
15           the investigating officer to testify to multi-layered hearsay which
             was used against petitioner as substantive evidence and truth of the
16           matter evidence.  Yuronda Breed testified in open court that she
             didn't recall giving Detective Hutto a statement about petitioner
17           allegedly telling her that he had "serious problems" with the
             decedent Obed Pigg.  The detective was then allowed to testify that
18           petitioner told Breed that he was having "serious problems" with
             decedent, which violated petitioner's due process and confrontation
19           rights guaranteed by the U.S. Constitution.

20   ECF No. 1 at 8.[16]

21           The trial court record reflects that petitioner moved during trial to exclude a number of

22

23   _____
     [16]  In support of his federal habeas petition, petitioner provides a declaration from Breed,
     asserting that petitioner never said or insinuated that he had a problem with Pigg, and that she did
24   not make the disputed statement to Officer Hutto.  ECF No. 22 at 5.  The declaration is dated
     January 27, 2014.  Id.  Because this declaration was obtained after petitioner had exhausted his
25   state remedies, and was not submitted to the California Supreme Court, it cannot be considered
     here unless petitioner first passes through the gateway of § 2254(d) by establishing an objectively
26   unreasonable application of clearly established federal law by the state court.  Pinholster, 131 S.
     Ct. at 1398 (review under § 2254(d) limited to state court record), 1401 (new evidence may be
27   considered, subject to limitations of § 2254(e)(2), where § 2254(d) does not bar federal habeas
     relief).
28

                                                    19

1    statements made by Yuronda Breed, the mother of petitioner's child, which were included in a

2    police report.  3 CT 815-816.  The court excluded all the statements but one: Breed's statement

3    that petitioner told her he was having "serious problems" with Pigg.  The court ruled that this

4    statement was admissible as a party admission.  7 RT 1968-1969.  When Breed testified, she

5    claimed not to remember what she had told the police.  7 RT 1756.  Officer Hutto then testified

6    that he had interviewed Breed, and she stated "that James Roots had told her he was having

7    serious problems with Obed Pigg."  7 RT 1767.

8            B.  The Clearly Established Federal Law

9            The admission of evidence is generally a matter of state law, and habeas relief does not lie

10   for errors of state law.  Estelle v. McGuire, 502 U.S. at 67.  The erroneous admission of evidence

11   violates due process, and supports habeas relief, only when it results in the denial of a

12   fundamentally fair trial.  Id. at 72.  The Supreme Court has rejected the argument that due process

13   necessarily requires the exclusion of prejudicial evidence.  Spencer v. Texas, 385 U.S. at 563-

14   564.

15           The Confrontation Clause prohibits the admission of testimonial out-of-court statements

16   by non-testifying individuals.  Crawford v. Washington, 541 U.S. 36.  The Confrontation Clause

17   is not violated by admission of out-of-court statements when the declarant testifies as a witness

18   and is subject to cross-examination.  California v. Green, 399 U.S. 149, 158 (1970).  Furthermore,

19   not all hearsay implicates the core concerns of the Confrontation Clause; the dispositive question

20   is whether the statement is "testimonial."  Crawford, 541 U.S. at 51.  A statement is testimonial

21   only when its primary purpose is the development of evidence to support a prosecution.  Hammon

22   v. Indiana, 547 U.S. at 822; Michigan v. Bryant, 562 U.S. at 358.

23           C.  The State Court's Ruling

24           Petitioner raised the Breed hearsay issue on appeal, as part of his general challenge to

25   motive evidence.  Lodged Doc. 7 at 20.  Because the California Supreme Court denied the

26   petition for review without comment, this court looks through to the California Court of Appeal's

27   reasoned opinion.  As noted previously, the intermediate appellate court rejected petitioner's due

28   process challenge to hearsay and motive evidence in broad terms: "Since there was no mistake in

20

1   allowing the prosecutor to pursue the motive theory, the defendant's contention that the trial was

2   unfair and violated his due process rights is without merit."  Lodged Doc. 4 at 16-17.

3          The confrontation aspect of the claim was presented for the first time in petitioner's state

4   habeas petition.  Respondent contends that the California Supreme Court's denial of the petition

5   on Dixon grounds creates a procedural bar to consideration of the claim here.  For the same

6   reasons previously explained in relation to Claim One, the court exercises discretion to bypass the

7   procedural default issue and proceed to the merits of the claim.

8                   D.  Objective Unreasonableness Under § 2254(d)

9          The state court did not unreasonably apply any clearly established federal law, and

10   petitioner's claim fails even without recourse to AEDPA deference.  Petitioner's underlying

11   statements to Breed were not "testimonial statements" and therefore do not come within the scope

12   of the confrontation clause as identified by the Supreme Court.  See Michigan v. Bryant, 562 U.S.

13   at 358; Delgadillo, 527 F.3d at 927.  Breed's out-of-court statement to Officer Hutto was

14   testimonial, but petitioner had the opportunity to cross-examine both Breed and Officer Hutto

15   about the statement and its circumstances.  Accordingly, petitioner was not denied his Sixth

16   Amendment right to confront witnesses.  See California v. Green, 399 U.S. at 158 (no

17   confrontation clause violation where declarant testifies and is subject to cross-examination).

18          Moreover, because the evidence of Breed's statement was subject to adversarial testing,

19   petitioner was not denied a fundamentally fair trial.  See Perry v. New Hampshire, 132 S.Ct. at

20   728 (because the reliability of evidence is generally a question for the jury, admission of

21   potentially unreliable evidence subject to adversarial testing does not violate due process).

22   Finally, for the same reasons that petitioner's due process challenge to the Samuels' hearsay fails,

23   his due process challenge to Officer Hutto's testimony fails under any standard of review.

24          For all these reasons, petitioner is not entitled to relief on Claim Three.

25   IV.    Claim Four: Admission of Residential Shooting Evidence

26              A.  Petitioner's Allegations and Pertinent State Court Record

27          Petitioner alleges as follows:

28

1
2
3
4
5
6
7

> The trial court erroneously allowed irrelevant and overly prejudicial evidence of a shooting of the petitioner's mother's home and her neighbor as motive evidence to the homicide petitioner was illegally convicted of.  This evidence was used as part of the unsupported motive theory the prosecution presented during trial.  The prosecution speculated that the petitioner suspected the decedent was the person responsible for the shooting so the petitioner murdered the decedent in retaliation.  This theory was wholly unsupported by any credible evidence and was another weak link in the prosecution's used to bolster her case [sic] which ultimately led to the petitioner's unjust conviction.  Had this unsupported and overly prejudicial evidence been properly disregarded and not allowed to taint the jury's decision, the petitioner would have received a more favorable result.

8
9

ECF No. 1 at 10.

10    The trial court record reveals that police community services officer Maureen Hopson

11  testified regarding the October 5, 2007 shooting of the home of Pamela Boyce, petitioner's

12  mother.  Officer Hopson responded on the morning of October 6 to follow up on a report of a

13  shooting the night before.  She observed bullet-holes in the walls of the house, the car parked in

14  the driveway, and the house next door.  The prosecution also introduced evidence that petitioner

15  had given the Boyce address as his address when he was booked after arrest.  The prosecutor was

16  permitted to argue that the sequence of events – petitioner's robbery of Pigg, closely followed by

17  the shooting of a residence associated with petitioner, after which petitioner stated that he had a

18  serious problem with Pigg – supported an inference that petitioner believed Pigg was responsible

19  for the shooting of the house.  This inference was an integral part of the prosecution's motive

20  theory.

21        B.  <u>The Clearly Established Federal Law</u>

22    The admission of evidence is generally a matter of state law, and habeas relief does not lie

23  for errors of state law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991).  The erroneous admission of

24  evidence violates due process, and supports habeas relief, only when it results in the denial of a

25  fundamentally fair trial.  <u>Id.</u> at 72.  The Supreme Court has rejected the argument that due process

26  necessarily requires the exclusion of prejudicial evidence.  <u>Spencer v. Texas</u>, 385 U.S. at 563-

27  564.  Due process does not generally require the exclusion of evidence subject to challenge for

28

1   unreliability, which is traditionally a question for the jury.  Perry v. New Hampshire, 132 S.Ct. at

2   728.

3              C.   The State Court's Ruling

4        Petitioner's due process challenge to admission of the residential shooting evidence was

5   presented on appeal as part of his overall due process challenge to the prosecution's motive

6   evidence.  That argument was rejected as follows: "Since there was no mistake in allowing the

7   prosecutor to pursue the motive theory, the defendant's contention that the trial was unfair and

8   violated his due process rights is without merit."  Lodged Doc. 4 at 16-17.

9              D.   Objective Unreasonableness Under § 2254(d)

10        The state court's rejection of this claim did not unreasonably apply clearly established

11   federal law.  The U.S. Supreme Court has never held that the admission of motive evidence in

12   particular, or prejudicial evidence in general, violates due process.  Accordingly, the AEDPA

13   precludes relief in this court.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per

14   curiam) (where no Supreme Court precedent controls the issue raised by a habeas petitioner in

15   state court, the state court's decision cannot be contrary to, or an unreasonable application of,

16   clearly established federal law); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.

17   2009) (denying relief under § 2254(d), for lack of clearly established federal law, on claim that

18   prejudicial evidence denied due process); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006)

19   (denying relief under § 2254(d), for lack of clearly established federal law, on claim that

20   propensity evidence denied due process), cert. denied, 549 U.S. 1287 (2007).

21        Short of a due process violation under clearly established federal law, the propriety of

22   motive evidence is a state law question which is not subject to review here.  Because no clearly

23   established due process precedent forbids the evidence at issue here, § 2254(d) bars relief.

24                                    CONCLUSION

25        For all the reasons explained above, the state courts' denial of petitioner's claims was not

26   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

27   AEDPA standards, petitioner has not established any violation of his constitutional rights.

28

1  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

2  denied.

3         These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

5  after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

8  he shall also address whether a certificate of appealability should issue and, if so, why and as to

9  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

10 within fourteen days after service of the objections.  The parties are advised that failure to file

11 objections within the specified time may waive the right to appeal the District Court's order.

12 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13 DATED: June 30, 2015

14

ALLISON CLAIRE
15 UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

24